The Judges delivered their opinions.
JUDGE TUCKER,
(after stating the case.) I admit, with Mr. Taylor, that this action being brought against two persons, and the evidence offered tending only to prove a permission to one of them to visit the plaintiff’s negro quarters, that matter could not be pleaded as a justification of the entry of both the defendants. I admit also, that it is an invariable rule, that every defence, which cannot be specially pleaded, may be given in evidence upon the general issue at the trial, (b) But I hold it to 'be a rule of law no less certain, “that illegal or improper evidence (however unimportant it may be to the cause) ought never to be confided to the Jury; for, if it should have an influence upon their minds, it will mislead them; and, if it should have none, it is useless, and may at least produce perplexity.”(c) The trespass charged in the declaration, is, 1st. For breaking and entering his close; 2dly. For beating his slaves; and, 3dly. For throwing down his fences around his wheat 292 *field, whereby his crop of wheat was trodden down and injured, by other persons’ cattle and horses. If the charge had been only for breaking and entering his close, and beating his slaves, and the evidence had been that he to whom the permission was given to visit the negro quarters, and to chastise any of the slaves who might be found acting improperly, had alone beaten any of them, and that the other defendant stood by without molesting any of them* the evidence offered might have been admitted in mitigation of damages, for the bare entry upon the plaintiff’s plantation, but not for the beating of the slaves. Because the permission did not extend to beating them unless they were found acting improperly: now it is not stated that they were found acting improperly; consequently, even Brown had no right to beat them; nor could it be a matter in mitigation of damages, for beating them if not found acting improperly, that he had permission to chastise them, (a word always, to be understood in a milder sense,) if found acting improperly. The evidence therefore would have been inadmissible, if Brown had been the party who took upon' him to beat the slaves. But the bill of exceptions gives us to understand that the proof was that Boisseau, and not Brown,, was the person who beat them. The permission given to Brown could, therefore, form no possible excuse for the conduct of Boisseau; nor for Brown, who, by standing by, and assenting to the beating by Boisseau, made himself particeps criminis with Boisseau. The evidence, therefore, was, I conceive, totally inadmissible, even upon this view of the subject. But the declaration charges a further wilful and violent trespass, in throwing down the plaintiff’s fences, and exposing his wheat to be injured by the neighbours’ cattle and horses. Could a permission peaceably to visit the negro quarters, and to chastise slaves found to be acting improperly, serve as an apology, or extenuation of this sort of damage? Surely not. The evidence, if admitted to go to the Jury, might have had the effect pointed out by Judge 293 Pendleton, and *was, therefore, in my opinion, most properly rejected. I am of opinion that the judgment be affirmed.
JUDGE ROANE could see no error in the judgment.
JUDGE FLEMING
was of the same opinion. The evidence had been very properly rejected.
Judgment unanimously affirmed.

 3 Bl. Com. 305, Bull. N. P. 298, 299.

 Per Pendleton, Pres’t, 2 Wash. 281, Lee v. Tapscott.